UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RYAN Y., : | |
|       Plaintiff, : | |
| : | |
|       v. : | C.A. No. 23-540-PAS |
| : | |
| MARTIN O'MALLEY, : | |
| Commissioner of Social Security, : | |
|       Defendant. : | |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On September 21, 2021, when he was twenty-eight, Plaintiff Ryan Y. ("Plaintiff") filed his application for Disability Insurance Benefits ("DIB") based (as relevant here)[1] on limitations caused by depression, anxiety (with panic attacks), post-traumatic stress disorder, obsessive compulsive disorder and poly substance abuse. Plaintiff was expelled from high school in the eleventh grade and has intermittently worked in various labor jobs, the last of which was off-the-books landscaping, probably in 2019. Tr. 20, 588-89. A self-described "stay at home dad," e.g., Tr. 541, Plaintiff lives with his wife and their children. Tr. 588. Plaintiff alleges that his onset of disability date is February 14, 2016, ("AOD")[2] and his date-last-insured ("DLI")[3] is March 31, 2020. Because Plaintiff had not had qualifying employment in many years, yet did not apply for

---

[1] Plaintiff alleged many other impairments on application. Only the mental impairments in issue on appeal to this Court are discussed in this memorandum and order.

[2] AOD refers to a claimant's alleged onset date. In this case, Plaintiff's application (filed on September 22, 2021) originally alleged onset on December 29, 2019. This was quickly corrected on October 12, 2021, to an AOD of February 14, 2016. Tr. 182.

[3] DLI refers to the last day of the quarter during which a DIB claimant meets insured status for purposes of social security disability insurance benefits. A DIB claim must be denied if disability is not established on or before the DLI. Program Operations Manual System ("POMS") § DI 25501.320 (Date Last Insured (DLI) and Established Onset Date). That is, the record must establish a disability that meets the durational requirements and that began on or before the DLI. 42 U.S.C. § 416(i)(2)(E); see Fischer v. Colvin, 831 F.3d 31, 32 (1st Cir. 2016).

DIB until September 21, 2021, this case presents an anomaly: Plaintiff's DLI limits him to a disability finding on or before March 31, 2020, yet Plaintiff's application filing date limits him to benefits beginning a year earlier (September 2020),[4] which is after the DLI.

Based on this anomaly and a confusing exchange with Plaintiff's attorney during the hearing about amending the AOD, the administrative law judge ("ALJ") issued a decision denying benefits that treats March 31, 2020, as Plaintiff's AOD, conflating it with the DLI. Yet, in this decision, the ALJ considered medical evidence going back to 2018, that is, covering almost all of the correct period in issue and relied on the findings of two non-examining expert psychologists who considered the period from the original AOD[5] to the date of their file review. The ALJ found that Plaintiff has severe mental impairments but that Plaintiff's RFC[6] permits him to understand and remember simple instructions (one to three step tasks) and carry out simple instructions for two-hour blocks of time over an eight-hour workday and forty-hour work week, with occasional social contact with the public and co-workers, although he can accept supervision. Tr. 22-23. The ALJ rejected the only treating source opinion as not persuasive because it is unsupported and inconsistent with the record, which establishes that Plaintiff's symptoms were well controlled with treatment, as confirmed by Plaintiff's activities. Tr. 27. The ALJ also noted that the source of this opinion is unclear so that he could not assess whether it came from an acceptable medical source. Id. Based on the testimony of a vocational expert

---

[4] See 20 C.F.R. § 404.621(a)(1) ("If you file an application for disability benefits . . . after the first month you could have been entitled to them, you may receive benefits for up to 12 months immediately before the month in which your application is filed.").

[5] "Original AOD" refers to Plaintiff's AOD of February 14, 2016.

[6] RFC refers to "residual functional capacity." It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

regarding at least three available jobs at "SVP 2,"[7] this RFC was found to permit work.  Tr. 28-30.

Pending before the Court on consent pursuant to 28 U.S.C. § 636(c) is Plaintiff's motion for reversal of the determination of the Commissioner of Social Security ("Commissioner") denying his claims.  ECF No. 9.  Plaintiff argues that remand is required because: he did not actually consent to the amended onset date; the ALJ's treatment of Plaintiff's subjective statements is flawed; the ALJ should have recontacted the treating source whose opinion was found to be unpersuasive; and some (but not all) the jobs to which the vocational expert (VE") testified, while categorized as unskilled (SVP 2), nevertheless are unavailable to Plaintiff because they are also classified in the Dictionary of Occupational Titles ("DOT") as "GED Level 2."[8]  Id. at 1-8.  Arguing that Plaintiff's arguments clash with applicable law and that the motion largely amounts to an improper request that the Court reweigh the evidence, the Commissioner has filed a counter motion for an order affirming the ALJ's decision.  ECF No. 11.

I.      **Standard of Review**

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42

---

[7] "SVP 2" refers to the "specific vocational preparation" level of work categorized for purposes of social security disability as "unskilled," that is, "[w]ork that requires little or no judgment to do simple duties that a claimant can learn on the job in a short period of time."  POMS § DI 25001.001(A) (73)-(77) (Medical and Vocational Quick Reference Guide).

[8] "GED" refers to the General Educational Development reasoning scale in the DOT issued by the Department of Labor.  The DOT assigns a GED reasoning level to listed occupations, ranging from Level 1 (the lowest level) to Level 6 (the highest).  U.S. Dep't of Labor, Dictionary of Occupational Titles, App. C (4th ed. 1991).  Level 1 requires the ability to "carry out simple one- or two-step instructions" and "deal with standardized situations with occasional or no variables in or from these situations encountered on the job."  Level 2 requires the ability to "carry out detailed but uninvolved written or oral instructions" and "deal with problems involving a few concrete variables in or from standardized situations."  Id.; see Couch v. Berryhill, No. CV 18-11023-FDS, 2019 WL 2340956, at *5 (D. Mass. June 3, 2019).  GED levels do not describe specific mental or skill requirements of a particular job, but rather describe the general educational background that makes an individual suitable for the job, broken into the divisions of Reasoning Development, Mathematical Development and Language Development.  Anderson v. Colvin, 514 F. App'x 756, 763-64 (10th Cir. 2013).

U.S.C. §§ 405(g), 1383(c)(3); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Though the difference is quite subtle, this standard is "somewhat less strict" than the "clearly erroneous" standard that appellate courts use to review district court fact-finding. Dickinson v. Zurko, 527 U.S. 150, 153, 162-63 (1999) (cited with approval in Biestek, 587 U.S. at 103). Thus, substantial evidence is more than a scintilla – it must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).

Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987); Lizotte v. Sec'y of Health & Hum. Servs., 654 F.2d 127, 128 (1st Cir. 1981). The determination of substantiality is based upon an evaluation of the record as a whole. Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied). The Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret or reweigh the evidence or otherwise substitute its own

judgment for that of the Commissioner.  Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).

## II.   Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(i); 20 C.F.R. § 404.1505(a).  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.   The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520(a).  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  Id. § 404.1520(a)(4)(i).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  Id. § 404.1520(a)(4)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  Id. § 404.1520(a)(4)(iii).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  Id. § 404.1520(a)(4)(iv).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  Id. § 404.1520(a)(4)(v).  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.

Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020); Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to DIB claims).

### B.     Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record.  See 20 C.F.R. § 404.1520c.  A "medical opinion" is defined in the regulations as a statement that identifies specific functional "limitations or restrictions" "about what [claimants] can still do despite their impairments."  20 C.F.R. § 404.1513(a)(2).  For purposes of documenting an impairment, a medical opinion must come from an "acceptable medical source," which includes a physician, a psychologist, a licensed advanced practice registered nurse or a licensed physician assistant opining within the scope of licensed practice.  20 C.F.R. § 404.1502.  The most important factors to be considered when the Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate.  20 C.F.R. § 404.1520c(b)(2); Elizabeth V. v. O'Malley, C.A. No. 23-00459-WES, 2024 WL 1460354, at *3 (D.R.I. Apr. 4, 2024), adopted by text order (D.R.I. Apr. 19, 2024).  Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding[] is with other evidence in the claim."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017).

Other factors that are weighed in light of all of the evidence in the record includes the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding.  See 20 C.F.R. § 404.1520c(c)(1)-(5); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5859.  "A medical opinion without supporting evidence, or one that is inconsistent with evidence from

6

other sources, [is] not . . . persuasive regardless of who made the medical opinion." Id. at 5854. Medical source findings/opinions may not constitute substantial evidence if rendered by a source who was not privy to evidence that would materially detract from the force of the findings. Jonathan G. v. Kijakazi, C.A. No. 22-107MSM, 2022 WL 17580663, at *6 (D.R.I. Dec. 12, 2022), adopted, 2023 WL 4077849 (D.R.I. May 3, 2023); Virgen C. v. Berryhill, C.A. No. 16-480 WES, 2018 WL 4693954, at *3 (D.R.I. Sept. 30, 2018).

      C.      **Claimant's Subjective Statements**

A reviewing court will not disturb a clearly articulated credibility finding based on substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. Guidance in evaluating the claimant's statements regarding the intensity, persistence and limiting effects of subjective symptoms, including pain, is provided by SSR 16-3p, 2017 WL 5180304, at *2-3 (Oct. 25, 2017), which directs the ALJ to consider the entire case record, including the objective medical evidence, the individual's statements, statements and other information provided by medical sources and other persons, and any other relevant evidence, as well as whether the subjective statements are consistent with the medical signs and laboratory findings. Id. at *2-5. As the First Circuit has emphasized, in the absence of direct evidence to rebut a claimant's testimony about subjective symptoms, such statements should be taken as true. Sacilowski, 959 F.3d at 441; Tegan S. v. Saul, 546 F. Supp. 3d 162, 169 (D.R.I. 2021). That is, if proof of disability is based on subjective evidence and a credibility determination is critical to the decision, the subjective statements must either be explicitly discredited or the implication of lack of credibility must be so clear as to amount to a specific credibility finding. Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995); Vanessa C. v. Kijakazi, C.A. No. 20-363MSM, 2021 WL 3930347, at *4 (D.R.I. Sept. 2, 2021), adopted, 2021 WL 8342850 (D.R.I. Nov. 2, 2021).

### III. <u>Analysis</u>

#### A.    **Amended Onset Date and Date-Last-Insured**

In the introductory portion of his decision, the ALJ noted that, "[a]t the hearing, the claimant through his representative amended the alleged onset date to March 31, 2020." Tr. 17. Based on this conflation of the AOD and DLI, the ALJ framed each of his key findings[9] as based on a single day – March 31, 2020. Plaintiff argues that this is error requiring remand because Plaintiff did not amend his onset date from February 14, 2016, to the DLI, so that the correct period in issue continued to be four years and not a single day. Plaintiff contends that this error is material because the Court cannot perform its own *de novo* review of the evidence for the correct period in issue to substitute for the ALJ's failure to make the requisite findings regarding his claim that he was disabled on <u>or before</u> the DLI.

The relevant facts may be briefly recited. At the outset of the hearing, the ALJ stated:

> Had you discussed at all amending the onset with the, claimant? This is a Title II with a protective filing date of September 2021, but a DLI of March of – well, March 31st, 2020. The alleged onset date is 2016. So possible amended onset would be the date of last insured.

Tr. 40. Plaintiff's counsel responded:

> Yes, your Honor, we have not discussed that yet but if I think that's necessary it will take me a couple of minutes to discuss it with him.

<u>Id.</u> The ALJ then advised Plaintiff that he would "provisionally use [the DLI] as the date that we'll focus on" and proceeded with the hearing. Tr. 40. During the hearing, both the ALJ and the attorney questioned Plaintiff, couching their questions consistently with the ALJ's provisional approach of conflating the AOD and DLI. Plaintiff's attorney specifically cabined his questions as focused on "March 2020" or "2020." Tr. 41-45. As the record confirms,

---

[9] These are the numbered findings presented in bold type, each of which is followed by the ALJ's supportive analysis. Tr. 20-30.

8

Plaintiff never responded further to the ALJ's suggestion that the AOD be amended, never corrected or asked the ALJ to adjust the provisional approach and never advised the ALJ (or the Appeals Council, see Tr. 175) that he had not acquiesced to the ALJ's suggestion to amend the onset date. Plaintiff now claims that he did not amend the AOD from February 14, 2016, to March 31, 2020.

The Commissioner contends that the Court need not resolve the thorny question whether Plaintiff may be deemed to have amended the original AOD by his attorney's statements and conduct during and after the hearing. Rather, he argues that what matters is whether Plaintiff sustained his burden of establishing a disability of sufficient duration that began on or before the DLI. In that regard, the Commissioner points out that the ALJ's underlying analysis (though not his operative findings) considered all of the evidence presented for the correct period and that the ALJ relied on the non-examining experts whose prior administrative findings are based on what Plaintiff contends is the correct period. Thus, the Commissioner asserts that remand would "amount to no more than an empty exercise." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000). Consistent with this argument is the reality that the conflation of the AOD and DLI impacted the development of the evidence only at the hearing in that Plaintiff's testimony was focused on March 2020 or 2020, and not on the entire period from 2016 to 2020; however, Plaintiff's attorney acquiesced in that approach, used the same framework for his questions and asked nothing to develop evidence of disability during any prior period to the conflated AOD/DLI despite having an opportunity to do so.

This circumstance presents the Court with two close calls. First, it seems plain that Plaintiff's attorney, by his response and seeming acquiescence, unwittingly drew[10] the ALJ into

---

[10] The Court is not suggesting that this was intentional conduct by counsel.

the error of believing the AOD had been amended. However, when the transcript is viewed in the cold light of this appeal, it is also plain that Plaintiff did not amend the AOD. Mindful that the Court's task is to ensure "a just outcome" by interpreting the Social Security Act liberally to "effectuate its general purpose of easing the insecurity of life," Mary K v. Berryhill, 317 F. Supp. 3d 664, 667 (D.R.I. 2018), as well as that the Commissioner has not argued that the Court should find that Plaintiff impliedly agreed to amend his AOD, the Court does not make that finding. Instead, I find that the conflation of the AOD and DLI must be treated as error.

      The second close call is whether this error should be found harmless. With an underlying analysis that the Court finds appropriately rests on substantial evidence supporting the conclusion that Plaintiff is not disabled, it is tempting to label as harmless the ALJ's error in mistakenly cabining the operative findings to a single day based on his belief that Plaintiff agreed to amend the AOD. The problem is that the Court is not the fact finder – that is the job of the ALJ. Morales v. Comm'r of Soc. Sec., 2 F. App'x 34, 36 (1st Cir. 2001) ("resolution of conflicts in the evidence and the ultimate determination of disability are for the ALJ, not the courts"). While it might seem unnecessary to remand a case when the ALJ's analysis of the entire period permits the Court to concoct its own reasons to extend the ALJ's time-limited findings to the entire period and come to the same result as that reached by the ALJ's flawed decision, it is not the function of the Court to replace the ALJ by providing post-hoc support for the result. See Charpentier v. Colvin, C.A. No. 12-312 S, 2014 WL 575724, at *15-16 (D.R.I. Feb. 11, 2014) (despite "a record loaded with examples of inconsistent and potentially false statements by [p]laintiff" from which court could make credibility finding, case is remanded for further proceedings because ALJ did not perform that assessment). That is, Plaintiff is right that an affirmance of the ALJ's decision would require the Court improperly to do its own fact

finding. Accordingly, the Court is compelled to remand the matter back to the Commissioner for further proceedings, which must include a new hearing at which Plaintiff may be questioned about the entire period and his new subjective statements may be considered in accordance with applicable law.

      **B.    ALJ's Treatment of Plaintiff's Subjective Statements**

Plaintiff argues that the ALJ erred in discounting his statements about the intensity of his anxiety, panic attacks and depression. Specifically, Plaintiff testified that, in 2020, almost half the time, he just lays around, "just stay[s] in the back room" and that he has crying spells that can last for a week. Tr. 43. In his function report, focused on the full period, Plaintiff alleged that he "can't get out of bed," and that since he became disabled in 2016, he has been unable, for example, to ride his motorcycle. Tr. 214-16. Plaintiff contends that the ALJ erred both because he failed adequately to articulate why Plaintiff's subjective statements are not fully credible and because the decision specifically limits the credibility finding to a single day, the improperly conflated AOD/DLI.[11]

The Commissioner counters that the ALJ's detailed analysis of Plaintiff's subjective statements is not limited to the quoted summary ["mostly stable conditions and conservative management of the symptoms,"], but rather encompasses three detailed pages of factual support spanning the record from 2018 through the DLI and includes citation not only to objective

---

[11] Plaintiff also argues that his subjective statements are consistent with two discrete records. This aspect of the argument fails because the medical records Plaintiff highlights are not pertinent to the relevant period. Specifically, Plaintiff points to one treating record when Plaintiff's anxiety and panic attacks markedly increased during a substance use relapse. Tr. 487 ("pt admits 'he messed up'"). This record was appropriately disregarded because it reflects an isolated incident that occurred well after the DLI, in the summer of 2021. Similarly, in October 2021, also well after the period in issue, a record reflects cardiac concerns (blood pressure and heart rate) that the cardiologist noted might be linked to stress, depression and anxiety. Tr. 552. In addition to being unrelated to the period in issue, this record seems supportive of the ALJ's findings in that this provider's objective mental health observations were normal: "Psych: alert and oriented X 3, mood and affect appropriate." Id.

medical records that amply support the finding of "mostly stable conditions and conservative management of the symptoms," but also to the records reflecting activities that clash with Plaintiff's subjective statements, particularly his caring for his and his wife's children as a self-described stay-at-home dad.  E.g., Tr. 541; see also Tr. 261 (Plaintiff hurts wrist in 2018 while riding motorcycle); Tr. 430 (in July 2019, Plaintiff reports to provider that he "goes four wheeling on ATV, at least once a week, doing yard work, Rpts he hasn't been in **therapy** because 'I'm a full time dad so I haven't been able to get here'") (emphasis in original); Tr. 509 (less than twelve months after DLI, Plaintiff reports to provider that he was working – "picking up as many jobs as he can (unskilled labor)").  The problem is that, despite citing to ample substantial evidence that is legally sufficient to discount Plaintiff's subjective statements, the ALJ also specifies that this seemingly well-supported finding is expressly limited to a single day – March 31, 2020.  Tr. 24.  Thus, for the balance of the period in issue, from the original AOD to the day before the DLI, this is a case like Charpentier where, despite ample evidence that Plaintiff's subjective statements are not reliable, there is no credibility finding to support the ALJ's determination not to give full effect to them.  See 2014 WL 575724, at *15-16.  Therefore, remand is required for the ALJ to reconsider Plaintiff's subjective statements in light of the entire period in issue.

   **C.**  **ALJ Should Have Recontacted Treating Source**

  Plaintiff relies on an unknown source who provided an opinion, Tr. 1013, which states that, prior to March 2020, plaintiff was only mildly impaired in two of the four "B criteria" spheres (understanding, remembering and applying information and interacting with others), was moderately impaired in the other two (concentrating, persisting and maintaining pace and

adapting and managing) and would be off-task up to 10% of the time.[12]  This opinion appears to have been part of material that was faxed to Plaintiff's counsel by CCAP, a medical entity where Plaintiff saw an array of providers for both physical and mental health concerns.  E.g., Tr. 338.  Apart from the cover sheet indicating that it was faxed from CCAP,[13] the record contains no clues as to the potential author.  Plaintiff argues that Nurse Practitioner Laurie Wilson (one of Plaintiff's primary mental health providers at CCAP) should have been "recontacted" to find out who signed this opinion, so that it could be ascertained whether it comes from an acceptable medical source and what is the basis for it.  Yet Plaintiff's counsel concedes that the illegible signature[14] on the opinion does not appear conceivably to be hers.

This argument is flawed by an array of insurmountable problems.[15]  First, as the Commissioner points out, the ALJ did appropriately consider the merits of the mystery opinion and found it to be unpersuasive because it is unsupported and inconsistent with the record, which

---

[12] Apart from the off-task time of "10%", the Court notes that this opinion is limited to the B criteria spheres and probably does not qualify as a "medical opinion" because it does not articulate whether Plaintiff has specific functional limitations.  20 C.F.R. § 404.1513(a)(2); see SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment").  Nevertheless, the ALJ accepted and considered it as an opinion.  The Court further notes that, at Step Two, the ALJ actually found Plaintiff to be more limited than is reflected in this opinion, except in the sphere of adaptation, and that there is no opinion from any qualified source translating this source's moderate adaptation limit and 10% off-task time into work-preclusive functional limitations.  In addition, the VE testified that the amount of off-task time reflected in the mystery opinion would be tolerated for the unskilled work to which the VE opined.  Tr. 49-50.  Thus, it appears unlikely that, if found to be persuasive, this opinion would support a finding that Plaintiff is disabled.  However, the Court does not need to consider these problems with the opinion, because the ALJ addressed the persuasiveness of this opinion on the merits and supportably found it to be unpersuasive.  Tr. 27.

[13] As the Commissioner points out, the copy of the opinion in the record reflects that Plaintiff submitted it with the fax cover sheet from CCAP, but with a page missing between the fax cover sheet and the opinion, making its provenance even more murky.

[14] At the hearing before me, the Court pressed Plaintiff's counsel, who agreed with this observation.  Plaintiff's counsel also confirmed that Plaintiff's attorneys have done nothing to follow-up regarding the provenance of the opinion.  That is, as of this writing, they still cannot make a proffer regarding who signed this opinion.

[15] Plaintiff argues that the ALJ's consideration of the mystery opinion is also flawed because the ALJ prefaced consideration of it by focusing on "the period through the [DLI]."  Tr. 27.  However, unlike the ALJ's key findings and his assessment of Plaintiff's subjective statements, this portion of the opinion is through a specified day; it is not limited to a single day.  See Tr. 1013.

reflects that Plaintiff's symptoms were well controlled with treatment, as his activities confirm.[16] The Court finds no error in this well-supported determination. Second, it was Plaintiff who procured this opinion from the practice where he received ongoing treatment; therefore, it is he who is well positioned to identify its author, yet he has failed to do anything despite his "primary responsibility under the Act to provide evidence in support of [his] disability . . . claims." SSR 17-4p, 2017 WL 4736894, at *1 (Oct 1, 2017). To suggest that that ALJ had an affirmative duty to guess who might have signed it and contact an unlikely candidate (Nurse Practitioner Wilson) to investigate its provenance is profoundly at odds with this foundational principle. Third, the applicable regulation that governs when an ALJ must recontact a source is clear that the ALJ's decision whether to do so is discretionary and that the decision to do so should be considered only if the evidence is insufficient to make a disability determination. 20 C.F.R. § 404.1520b(b)(2). Plaintiff has not pointed to any reason why the evidence available to the ALJ was not sufficient to make the disability determination, particularly where the ALJ appropriately relied on substantial evidence to assess the persuasiveness of this opinion in light of its consistency and supportability.

Based on the foregoing, the Court finds no error either in the ALJ's approach in determining that this opinion is unpersuasive or in the ALJ's failure to recontact CCAP Nurse Practitioner Wilson or any other CCAP provider to initiate an investigation to find out who signed it.

### D. Challenge to Jobs Classified as "GED Level 2"

---

[16] This finding is well supported, not just by the medical evidence, but also by the prior administrative findings. Thus, the non-examining experts both found only mild adaptation limits with minimal functional "adaptation limitations" found at the initial phase and none found on reconsideration; both also found that Plaintiff would be interrupted by psychological symptoms (off-task) but would still be able to sustain a "normal 8/5/40 work routine." Tr. 62, 71-72.

While remand may well require new Step Five evidence to provide support for the expansion of the ALJ's Step Five finding from a single day to the entire period, the Court pauses to address Plaintiff's specific argument that remand is required because two (hospital cleaner and marker) of the three jobs on which the ALJ relied for his finding that there is available work that Plaintiff can perform are classified as GED Level 2, which Plaintiff contends is categorically beyond the ability of an individual like him who is limited to "understand[ing] and remember[ing] simple instructions (one to three step tasks) and carry[ing] out those simple instructions for two-hour blocks of time over an eight hour workday and forty-hour work week," as the ALJ found. Plaintiff concedes that one of the jobs (floor waxer) on which the ALJ relied is GED Level 1 and therefore well within the scope of Plaintiff's RFC. Plaintiff does not explain why the ALJ's reliance on this third job, of which there are 276,000 in the national economy, is not sufficient to render any error harmless. Applegate v. Saul, 845 F. App'x 569, 570-71 (9th Cir. 2021) ("even if the first two jobs the VE identified . . . are inconsistent with the reasoning level noted in . . . RFC, this error is harmless because one of the jobs the VE identified . . . indisputably meets the RFC presented by the ALJ and exists in sufficient numbers in the national economy"); Anderson v. Colvin, 514 F. App'x 756, 763-64 (10th Cir. 2013) ("Assuming . . . conflict between the VE's testimony and the DOT, the ALJ's failure to resolve the alleged conflict was harmless error" because VE identified jobs at GED Level 1 that ALJ found exist in significant numbers). For this reason alone, the Court rejects Plaintiff's GED-based argument.

Turning to the merits of Plaintiff's GED argument, the Court notes that Plaintiff relies on a decision from the Ninth Circuit, which holds that, when presented with a claimant undisputedly demonstrated to be cognitively incapable even of completing a high school education, there is a conflict requiring further explanation at Step Five if the RFC is limited to simple,

15

routine/repetitive tasks yet the VE testifies to jobs classified by the DOT as GED Level 3. Zavalin v. Colvin, 778 F.3d 842, 847 (9th Cir. 2015) ("there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning"). The Court finds that the argument fails for several reasons.

For starters, the facts in Zavalin differ materially from the facts presented here in that Plaintiff failed to complete high school because he was expelled in eleventh grade, not because of significant cognitive impairments as in Zavalin. See Shari B. v. Comm'r of Soc. Sec., No. 3:19-CV-6128-DWC, 2020 WL 4200969, at *3 (W.D. Wash. July 22, 2020) (without evidence of cognitive limitations present in Zavalin, court declines to apply Zavalin because "Plaintiff's mental limitations do not prevent her from performing the requirements of jobs with a reasoning level of three"). This case is also distinguishable from Zavalin because the jobs to which the VE testified in Zavalin were GED Level 3, not GED Level 2. GED Level 2 is the top DOT reasoning category for the jobs to which the VE in this case testified. Thus, Zavalin holds that an RFC limited to "simple and routine work tasks" is consistent with GED Level 2, though not GED Level 3. Zavalin, 778 F.3d at 846. Moreover, the ALJ's RFC is specifically grounded on the finding of the non-examining psychologist at the reconsideration phase and provides that Plaintiff can handle simple instructions clarified as related to "one to three tasks," which appears to be precisely within the scope of GED Level 2 reasoning. See Ruth J. v. Comm'r of Soc. Sec., No. 1:23-cv-64, 2024 WL 169105, at *4-7 (S.D. Ohio Jan. 16, 2024) ("Reasoning Level 2 encompasses simple work that requires more than two-step instructions") (emphasis supplied). Thus, if the Court were to find that Zavalin should be applied in the First Circuit,[17] the ALJ's Step Five decision would be affirmed.

---

[17] I do not endorse the adoption of Zavalin, which has not fared well in other Circuits and courts. The Sixth Circuit flatly rejected it. Monateri v. Comm'r of Soc. Sec., 436 F. App'x 434, 446 (6th Cir. Aug. 11, 2011). Other Circuits

As a third reason for rejecting Plaintiff's GED argument, the Commissioner asks the Court to consider that, in October 2021, revised in December 2023, the Social Security Administrative ("SSA") weighed in with a Social Security Emergency Message, EM-21065 REV (effective December 5, 2023),[18] which advises adjudicators that, while DOT and SCO are acceptable sources of occupational information for adjudicating disability claims, they also contain information of which SSA does not take administrative notice and that "SSA does not consider General Education Development (GED) ratings," which "do not correspond to SSA's regulatory definitions of unskilled, semiskilled, and skilled work."  See Wayne C. v. O'Malley, No. 1:23-cv-00109-NT, 2024 WL 340792, at *3 (D. Me. Jan. 30, 2024), adopted, 2024 WL 1109233 (D. Me. Mar. 14, 2024) (discussing prior version of emergency message directing adjudicators not to consider GED levels).  However, as Wayne C. notes, it is far from clear whether this Message originally or as revised, amounts to binding agency policy.  Id.  The Court declines to resolve this question because, as in Kutyba v. Comm'r of Soc. Sec. Admin., there is no need to rely on the Emergency Message "as the Court finds other reasons why Claimant's argument fails."  No. 5:22-CV-00483-CEH, 2023 WL 1438853, at *9 (N.D. Ohio Jan. 31, 2023).

---

strictly cabin its applicability to cases where the jobs relied on call for a higher reasoning level than GED Level 2 and the Step Five conflict is plainly exposed during the hearing.  See Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) (rejecting concept that "simple and routine work tasks" is inconsistent with the demands of level-three reasoning and holding that at Step Five ALJ must explain reasoning analysis only when conflict between DOT and the VE's testimony is apparent – "obvious enough that the ALJ should have picked up on [it] without any assistance"); Renfrow v. Astrue, 496 F.3d 918, 920-21 (8th Cir. 2007) (no conflict appears to exist between RFC precluding complex technical work and GED reasoning level of three).  Decisions from lower courts in the First Circuit are similar, holding that DOT reasoning levels two and three are consistent with an RFC limitation to simple and unskilled tasks.  Cruz Madera v. Saul, Civil Action No. 19-01320-FDS, 2021 WL 9100419, at *12 (D.P.R. Feb. 26, 2021); see Couch v. Berryhill, Civil Action No. 18-11023-FDS, 2019 WL 2340956, at *5 (D. Mass. June 3, 2019) (no conflict between limitation to simple and unskilled work and GED level 2 jobs) (listing cases); cf. Oyola-Rosa v. Sec'y of Health & Hum. Servs., 981 F.2d 1245, 1992 WL 387678, at *8 (1st Cir. 1992) (unpublished table decision) ("general educational development required to perform the jobs [at GED Level 1 and 2] is low, and would appear to be appropriate in light of [claimant']s fifth grade education").

[18] EM-21065 REV - Guidelines for Using Occupational Information in Electronic Tools (Dec. 5, 2023) https://secure.ssa.gov/apps10/reference.nsf/links/10292021113305AM.

Thus, the Court holds that there was no error in the ALJ's reliance on the three jobs presented by the VE because (1) any possible GED-based error is harmless in light of the ALJ's reliance on a GED Level 1 job with a facially significant number of positions in the national economy; (2) the ALJ's RFC was consistent with, and not in conflict with, GED Level 2 reasoning; (3) if a conflict conceivably exists, it was waived by Plaintiff's failure to expose it during the ALJ hearing. If the Plaintiff's RFC remains unchanged following remand, the ALJ may rely on these jobs (and any other evidence he may elicit) to make a Step Five finding properly covering the entire period in issue.

## IV.  Conclusion

Based on the foregoing, Plaintiff's Motion for Reversal of the Disability Determination of the Commissioner (ECF No. 9) is GRANTED for a new hearing and further proceedings regarding the full period in issue in conformity with this Memorandum and Order; otherwise, Plaintiff's motion is DENIED. As to the period in issue, the Commissioner's Motion to Affirm (ECF No. 11) is DENIED; otherwise, the Commissioner's motion is GRANTED.[19]

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 8, 2024

---

[19] The Court has considered and rejects Plaintiff's contention that this case should alternatively be remanded for an award of benefits. "[T]his is far from being a case in which an award of benefits should be considered. Such a judicial award 'is rarely appropriate' except in extraordinary circumstances when either the proof is overwhelming, or the proof is very strong and there is no contrary evidence." Leanne B. v. O'Malley, C.A.No. 23-100-MSM, 2024 WL 862280, at *8 (D.R.I. Feb. 29, 2024) (quoting Ogannes B. v. Kijakazi, C.A. No. 22-325WES, 2023 WL 5561108, at *2, *12 (D.R.I. Aug. 29, 2023)), adopted by text order (D.R.I. Sept. 13, 2023). Just Plaintiff's activities (caretaker for children, motorcycling and "4-wheeling"), coupled with the dearth of medical evidence for much of the period and the relative benignity of such objective clinical observations as appear for the period in issue, make clear that none of these is true in this case.